UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS J. OLSEN, Individually and on behalf of all other persons similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>THOM BROWNE, INC.,<br><br>          Defendant. | ECF CASE<br><br><br>No.: _____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1.      Plaintiff Thomas J. Olsen, who is legally blind, brings this civil rights action against Defendant Thom Browne, Inc. ("Thom Browne") for its failure to design, construct, maintain, and operate its website, www.thombrowne.com/us (the "Website"), to be fully accessible to and independently usable by Plaintiff Olsen and other blind or visually-impaired people. Thom Browne denies full and equal access to its Website.

2.      Plaintiff Olsen, individually and on behalf of others similarly situated, asserts claims under the Americans With Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL") against Thom Browne.

3.      Plaintiff Olsen seeks a permanent injunction to cause Thom Browne to change its corporate policies, practices, and procedures so that its Website will become and remain accessible to blind and visually-impaired consumers.

THE PARTIES

4.      Plaintiff Olsen is, at all relevant times, a resident of Brooklyn, New York, Kings County. As a blind, visually-impaired handicapped person, he is a member of a protected class of individuals under Title III of the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*, the NYSHRL and NYCHRL.

5.      Thom Browne is at all relevant times a foreign business corporation that is organized under Delaware law, authorized to do business in the State of New York, and has its principal office at 210 11th Avenue, New York, New York 10001.

JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff Olsen's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1332.

7.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff Olsen's NYSHRL, N.Y. Exec. Law Article 15, and NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*, claims.

8.      Venue is proper in this District under 28 U.S.C. §§1391(b)(1), 1391(d) because Thom Browne's corporate headquarters is located in this District and it would thereby be considered a resident of this District if it was a separate state.

9.      This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

<u>NATURE OF ACTION</u>

10.     Blind and visually impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech ("JAWS") is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

11.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually impaired user is unable to access the same content available to sighted users.

12.     The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure its websites are accessible.

13.     For a website to be equally accessible to a blind or visually impaired person, under these guidelines, it should have following:

a.     Alternative text ("alt-text") or text equivalent for every non-text element. Alt-text is an invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures, which includes captcha

prompts. Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics, depriving that person from knowing what is on the website.

        b.      Videos have audio description.

        c.      Title frames with text are provided. Absent these titles, navigating a website is particularly difficult.

        d.      Webpage headings are properly labeled with the topic or purpose of the webpage, versus being blank. Screen readers read out page headings, allowing users to quickly skip to a section. Navigation is, however, very difficult without those headings.

        e.      Equivalent text is provided when using scripts.

        f.      Forms may be completed with the same information and functionality as for sighted persons. Absent forms being properly labeled, it is difficult for a visually impaired or blind individual to complete the forms, as they do not know what the fields, how to input data, or what options to select (e.g., selecting a date or a size). A compliant website will, instead, provide labels or instructions when content requires user input. This includes captcha prompts, requiring the user to verity that he or she is not a robot.

        g.      Information about the meaning and structure of content is conveyed by more than the visual presentation of content.

h.      Web pages do not share the same ID or title. When two or more elements on a web page share the same ID or title, it cause problems in screen readers which use IDs for labeling controls and table headings.

i.      Linked images must contain alt-text explaining the image. Absent that alt-text, a screen reader has no content to present the user as to what the image is.

j.      The purpose of each link is easily determined from how the link is labeled. Absent properly labeling each link or when no description exists, it confuses keyboard and screen-reader users as they do not know the purpose of the links. This includes captcha prompts.

k.      No redundant links where adjacent links go to the same URL address. When redundant links exist, it causes additional navigation and repetition for keyboard and screen-reader users.

l.      Portable Document Formats (PDFs) are accessible. When they are inaccessible, the visually impaired or blind individual cannot learn what information is on them.

m.      One or more keyboard operable user interface has a mode of operation where the keyboard focus indicator is discernible.

n.      Changing the setting of a user interface component does not automatically cause a change of content where the user has not been advised before using the component.

o.      The name and role of all user interface elements can be programmatically determined; items that can be set by the user can be programmatically

set; and/or notification of changes to these items are available to user agents, including assistive technology.

STATEMENT OF FACTS

Thom Browne, Its Website And Its Website's Barriers

14.    Thom Browne owns and operates stores throughout the United States, including a location at 100 Hudson Street, New York, New York. It sells, at these stores, shirts, pants, jackets, eyewear, shoes, accessories and similar items.

15.    Thom Browne's Website is heavily integrated with its stores, serving as a gateway to them. Through the Website, Thom Browne's customers are, *inter alia*, able to: learn information about the stores' locations and hours of operation; the items for sale in the stores and online, including available sizes, the materials used, details about the items, and care instructions; purchase items for delivery; learn about the return policy; learn about the "New Arrivals" and "Collections"; learn about the company; learn about items on sale; and read and view the "TB Journal."

16.    It is, upon information and belief, Thom Browne's policy and practice to deny Plaintiff Olsen and other blind or visually-impaired users access to its Website, thereby denying the facilities and services that are offered and integrated with its stores. Due to its failure and refusal to remove access barriers to its Website, Plaintiff Olsen and visually-impaired persons have been and are still being denied equal access to Thom Browne's stores and the numerous facilities, goods, services, and benefits offered to the public through its Website.

17.     Plaintiff Olsen cannot use a computer without the assistance of screen-reading software. He is, however, a proficient screen-reader user and uses it to access the Internet. He has visited the Website on separate occasions using screen-reading software.

18.     During his visits to the Website, the last occurring on or about June 7, 2018, Plaintiff Olsen encountered multiple access barriers that denied him the full enjoyment of the facilities, goods, and services of the Website, as well as to the facilities, goods, and services of Thom Browne's stores. Because of these barriers he was unable to, substantially equal to sighted individuals:

a.     Know what is on the Website. This is largely due to the non-text images lacking alt-text describing them. They are not tagged with descriptions, not even file names. He was, therefore, unable to learn details about available items. Also, the headings and drop downs did not function properly. He, therefore, was unable to access information on "New Arrivals," "Sale," or "Collections."  He also could not read the "TB Journal" or the Biography of Thom Browne. After randomly searching among various links, Plaintiff Olsen was eventually able to access items in a category. He was, however, unable to access any information about the item or select a size. No images of the item are tagged. In comparison, a sighted user, when viewing a particular item, can read "Details" about the item, including design details such as pattern, collar type, pockets, etc. and "Notes" including  material, item number and country of fabrication. A sighted user is also given several images of the item from different angles to better understand style and fit.

b.     Navigate the Website. The screen reader has significant difficulty navigating through this website. As mentioned above, the headings did not function

properly. The headings are not listed as links, therefore he was unable to tab through them to reach the desired destination. When he selected "Shop Men" from the menu options, no options appeared for "new arrivals," "black tie," "eyewear," etc. The sighted user, in comparison, when selecting "Shop Men" get a drop down with several options to refine the search. Selecting "Shop Mens" did not even take Plaintiff Olsen to a new page, but rather appeared to bring him back to the top of the page he was on. When trying to locate a store, the screen reader also had difficulty. When Plaintiff Olsen selected "Thom Browne New York" from the "Thom Browne Stores" page, his screen reader did not alert him to any additional content or change of page. He had to search for new content and only by scrolling to the bottom of the screen did he find information on location and hours.

    c.  Purchase items online for delivery. Plaintiff Olsen could not purchase items online because he had difficulty locating items. He was also unable to access any information about specific items. Lastly, he was unable to select a size in order to add an item to his bag.

    19.  Plaintiff Olsen was denied full and equal access to the facilities and services Thom Browne offers to the public on its Website because he encountered multiple accessibility barriers that visually-impaired people often encounter with non-compliant websites:

    a.  Lack of alt-text for images.

    b.  Headings do not function properly and are not properly nested.

c.      Pages have the same title. For example, "Collections" is used for pages showing the "Women's Resort 2019" Collection and the "Mens S/S 2019" Collection.

Thom Browne Must Remove Barriers to Its Website

20.    Due to the inaccessibility of its Website, blind and visually-impaired customers such as Plaintiff Olsen, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services Thom Browne offers to the public on its Website. The Website's access barriers that Plaintiff Olsen encountered have caused a denial of his full and equal access in the past, and now deter him on a regular basis from accessing the Website. These access barriers have likewise deterred him from visiting Thom Browne's stores and enjoying them equal to sighted individuals.

21.    If the Website was equally accessible to all, Plaintiff Olsen could independently navigate it, view goods and service items, locate Thom Browne's stores and learn their hours of operation, learn about the items for sale and complete a desired transaction as sighted individuals do.

22.    Through his attempts to use the Website, Plaintiff Olsen has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

23.    Because simple compliance with the WCAG 2.0 Levels A and AA Guidelines would provide Plaintiff Olsen and other visually-impaired consumers with equal access to the Website, Plaintiff Olsen alleges that Thom Browne has engaged in acts of intentional discrimination, including, but not limited to, the following policies or practices:

a.     Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff Olsen;

b.     Failing to construct and maintain a website that is sufficiently intuitive to be equally accessible to visually-impaired individuals, including Plaintiff Olsen; and,

c.     Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually impaired consumers, such as Plaintiff Olsen, as a member of a protected class.

24.     Thom Browne therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

25.     Title III of the ADA expressly contemplates the injunctive relief that Plaintiff Olsen seeks under 42 U.S.C. § 12188(a)(2).

26.     Because its Website has never been equally accessible, and because Thom Browne lacks a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff Olsen seeks a permanent injunction under 42 U.S.C. § 12188(a)(2) requiring Thom Browne to retain a qualified consultant acceptable to Plaintiff Olsen to assist Thom Browne to comply with WCAG 2.0 Levels A and AA guidelines for its Website:

a.     Remediating the Website to be WCAG 2.0 A and AA compliant;

b.     Training Thom Browne employees and agents who develop the Website on accessibility compliance under the WCAG 2.0 A and AA guidelines;

        c.      Regularly checking the accessibility of the Website under the WCAG 2.0 A and AA guidelines;

        d.      Regularly testing user accessibility by blind or vision-impaired persons to ensure that Thom Browne's Website complies under the WCAG 2.0 A and AA guidelines; and,

        e.      Developing an accessibility policy that is clearly disclosed on Thom Browne's Website, with contact information for users to report accessibility-related problems.

27.      Although Thom Browne may currently have centralized policies on maintaining and operating its Website, Thom Browne lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually impaired consumers.

28.      Without injunctive relief, Plaintiff Olsen and other visually impaired consumers will continue to be unable to independently use the Website, violating its rights.

29.      Thom Browne has, upon information and belief, invested substantial sums in developing and maintaining its Website and has generated significant revenue from the Website. These amounts are far greater than the associated cost of making its Website equally accessible to visually impaired customers.

30.      Thom Browne has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

CLASS ACTION ALLEGATIONS

31.     Plaintiff Olsen seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Thom Browne's Website and as a result have been denied access to the equal enjoyment of goods and services offered in Thom Browne's stores during the relevant statutory period ("Class Members").

32.     Plaintiff Olsen seeks to certify a State of New York subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the State of New York who have attempted to access the Website and as a result have been denied access to the equal enjoyment of goods and services offered in Thom Browne's stores during the relevant statutory period ("New York Subclass Members").

33.     Plaintiff Olsen seeks to certify a New York City subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the New York City who have attempted to access the Website and as a result have been denied access to the equal enjoyment of goods and services offered in Thom Browne's stores during the relevant statutory period ("New York City Subclass Members").

34.     Common questions of law and fact exist amongst the Class Members, New York Subclass Members and New York City Subclass Members:

        a.      Whether Thom Browne's stores are places of "public accommodation";

        b.      Whether Thom Browne's Website is a "public accommodation" or a service or good "of a place of public accommodation" under Title III of the ADA;

c.     Whether Thom Browne's Website is a "place or provider of public accommodation" or an "accommodation, advantage, facility or privilege" under the NYSHRL or NYCHRL;

d.     Whether Thom Browne's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating Title III of the ADA; and

e.     Whether Thom Browne's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYSHRL or NYCHRL.

35.     Plaintiff Olsen's claims are typical of the Class Members, New York Subclass Members and New York City Subclass Members: they are all severely visually impaired or otherwise blind, and claim that Thom Browne has violated Title III of the ADA, NYSHRL or NYCHRL by failing to update or remove access barriers on its Website so it can be independently accessible to the visually impaired individuals.

36.     Plaintiff Olsen will fairly and adequately represent and protect the Class and Subclasses' interests because he has retained and is represented by counsel competent and experienced in complex class action litigation, and because he has no interests antagonistic to the Class or Subclasses. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Thom Browne has acted or refused to act on grounds generally applicable to the Class and Subclasses, making appropriate both declaratory and injunctive relief with respect to Plaintiff, the Class and Subclasses.

37.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class and Subclass Members

predominate over questions affecting only individuals, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

38.    Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

FIRST CAUSE OF ACTION
VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 *et seq.*

39.    Plaintiff Olsen, individually and on behalf of the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

40.    Title III of the ADA prohibits "discriminat[ion] on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

41.    Thom Browne's stores are public accommodations under Title III of the ADA, 42 U.S.C. § 12181(7). Its Website is a service, privilege, or advantage of Thom Browne's stores. The Website is a service that is integrated with these locations.

42.    Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

43.    Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods,

services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

44.     Under Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

45.     These acts violate Title III of the ADA, and the regulations promulgated thereunder. Plaintiff Olsen, who is a member of a protected class of persons under Title III of the ADA, has a physical disability that substantially limits the major life activity of sight under 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, he has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.

46.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff Olsen requests the relief as set forth below.

SECOND CAUSE OF ACTION
VIOLATIONS OF THE NYSHRL

47.     Plaintiff Olsen, individually and on behalf of the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

48.     Thom Browne's State of New York store constitutes a sales establishment and public accommodation under N.Y. Exec. Law § 292(9). Thom Browne's Website is a service, privilege or advantage of Thom Browne. Thom Browne's Website is a service that is by and integrated with that store.

49.     Thom Browne is subject to NYSHRL because it owns and operates its New York store and the Website. Thom Browne is a "person" under N.Y. Exec. Law § 292(1).

50.     Thom Browne is violating the NYSHRL in refusing to update or remove access barriers to its Website, causing its Website and the services integrated with its stores to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Thom Browne makes available to the non-disabled public. N.Y. Exec. Law §§ 296(2)(a), 296(2)(c)(i), 296(2)(c)(ii).

51.     Readily available, well-established guidelines exist on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities and government agencies in making their websites accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components

to make its Website accessible would neither fundamentally alter the nature of its business nor result in an undue burden to them.

52.     Thom Browne's actions constitute willful intentional discrimination against the class because of a disability, violating the NYSHRL, N.Y. Exec. Law § 296(2), in that Thom Browne has:

a.     Constructed and maintained a website that is inaccessible to Class Members with knowledge of the discrimination; and/or

b.     Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.     Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

53.     Thom Browne discriminates, and will continue in the future to discriminate against Plaintiff Olsen and New York Subclass Members on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Thom Browne's Website and its stores under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Thom Browne from continuing to engage in these unlawful practices, Plaintiff and the New York Subclass Members will continue to suffer irreparable harm.

54.     As Thom Browne's actions violate the NYSHRL, Plaintiff Olsen seeks injunctive relief to remedy the discrimination, compensatory damages, civil penalties for each offense, and attorneys' fees and costs. N.Y. Exec. Law § 297(4)(c) *et seq.*

THIRD CAUSE OF ACTION
VIOLATIONS OF THE NYCHRL

55.     Plaintiff Olsen, individually and on behalf the New York City Subclass
Members, repeats and realleges every allegation of the preceding paragraphs as if fully
set forth herein.

56.     Thom Browne's New York City location is a sales establishment and
public accommodation under the NYCHRL, N.Y.C. Admin. Code § 8-102(9), and its
Website is a service that is integrated with its establishment.

57.     Thom Browne is subject to NYCHRL because it owns and operates its
store in the New York City and its Website, making it a person under N.Y.C. Admin.
Code § 8-102(1).

58.     Thom Browne is violating the NYCHRL in refusing to update or remove
access barriers to Website, causing its Website and the services integrated with its stores
to be completely inaccessible to the blind. This inaccessibility denies blind patrons full
and equal access to the facilities, goods, and services that Thom Browne makes available
to the non-disabled public. N.Y.C. Admin. Code §§ 8-107(4)(a), 8-107(15)(a).

59.     Thom Browne's actions constitute willful intentional discrimination
against the Subclass because of a disability, violating the NYCHRL, N.Y.C. Admin.
Code § 8-107(4)(a) and § 8-107(15)(a,) in that it has:

          a.     Constructed and maintained a website that is inaccessible to blind
class members with knowledge of the discrimination; and/or

          b.     Constructed and maintained a website that is sufficiently intuitive
and/or obvious that is inaccessible to blind class members; and/or

c.      Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

60.      As such, Thom Browne discriminates, and will continue in the future to discriminate against Plaintiff Olsen and the New York City Subclass Members because of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of its Website and its establishment under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Thom Browne from continuing to engage in these unlawful practices, Plaintiff and the New York City Subclass will continue to suffer irreparable harm.

61.      As Thom Browne's actions violate the NYCHRL, Plaintiff Olsen seeks injunctive relief to remedy the discrimination, compensatory damages, civil penalties and fines for each offense, and attorneys' fees and expenses. N.Y.C. Admin. Code §§ 8-120, 8-126(a).

FOURTH CAUSE OF ACTION
DECLARATORY RELIEF

62.      Plaintiff Olsen, individually and on behalf the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

63.      An actual controversy has arisen and now exists between the parties in that Plaintiff Olsen contends, and is informed and believes that Thom Browne denies, that its Website contains access barriers denying blind customers the full and equal access to the goods, services and facilities of its Website and by extension its stores, which Thom Browne owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et*

*seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

      64.    A judicial declaration is necessary and appropriate now in order that each of the parties may know its respective rights and duties and act accordingly.

PRAYER FOR RELIEF

      WHEREFORE, Plaintiff Olsen respectfully requests this Court grant the following relief:

      a.    A preliminary and permanent injunction to prohibit Thom Browne from violating Title III of the ADA, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Admin. Code § 8-107, *et seq.*, and the laws of New York;

      b.    A preliminary and permanent injunction requiring Thom Browne to take all the steps necessary to make its Website into full compliance with the requirements set forth in Title III of the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

      c.    A declaration that Thom Browne owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by ADA, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.*, N.Y.C. Admin. Code § 8-107, *et seq.*, and the laws of New York

      d.    An order certifying the Class and Subclasses under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

-20-

       e.      Compensatory damages in an amount to be determined by proof, including all applicable statutory damages, punitive damages and fines;

       f.      Pre- and post-judgment interest;

       g.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

       h.      Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Olsen demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
       July 15, 2018

                     LIPSKY LOWE LLP

                     <u>s/ Douglas B. Lipsky</u>
                     Douglas B. Lipsky
                     Christopher H. Lowe
                     630 Third Avenue, Fifth Floor
                     New York, New York 10017-6705
                     212.392.4772
                     doug@lipskylowe.com
                     chris@lipskylowe.com